Good morning. Judge Schall has a motion, so I will turn to him. Thank you, Chief. Yes, I do have a motion. It's a happy motion. I am moving the admission to the bar of the court of my law clerk, Justin Hendricks. I move the admission of Justin Hendricks, who is a member of the bar and in good standing with the highest court of Virginia. I have knowledge of his credentials and am satisfied that he possesses the necessary qualifications for admission to the court. Those are the official words that have to be spoken. The one little tiny gloss I would like to put on it is that Justin has been an excellent clerk with me this year, and I'm looking forward to seeing him in court, and I know he'll be an excellent addition to the bar of the court. And I request that my motion be granted respectfully. Well, we enthusiastically approve the motion, and we welcome you to the bar. And do we have to bring in? You solemnly swear or affirm that you will report yourself as an attorney and counselor of this court, rightly and according to law, and that you will support the Constitution of the United States of America. I do. Welcome to the bar of the United States of America. Thank you. Congratulations. The first case for argument this morning is 14-1087, Gandhi v. Vandal, Conrad. Mr. Figg. Thank you, Madam Chief Judge. Good morning, Your Honors, and may it please the Court. Both parties now agree that the PTAB's holding that the broad claims that were presented by both of them in their patents and applications were unpatentable was a correct ruling. Those claims are directed to a diesel exhaust purification system that consists of an oxidation catalyst, followed by an LNT catalyst, followed by an SCR catalyst, along with lean and rich fuel cycling to regenerate the LNT catalyst and store and then convert nitrogen oxides and eliminate them from the emissions. The Board found, and the parties also do not dispute, that it was well known and conventional to add particulate filters to systems for purifying the exhaust of diesel engines. In fact, at page 6 of Vandal-Conrad's red brief, they admit that systems employing LNTs and SCRs were not capable of lowering carbon particulate matter and that particulate filters must be used for this purpose. The prior art twig and... But just to get to the heart of the matter, the Board deserves deference on the substantial evidence. Why doesn't that fact conclude the case for us? Well, I think as we pointed out in our briefs, the issue of obviousness is a question of law, and this Court does not owe deference to the Board's decision on that ultimate question. Right. There is no dispute in this case about the scope and content of the prior art or the differences between the prior art and the claimed invention. But the Board found a teach-away at least in certain... Yes, and I would like to get to the teach-away because I believe what the Board did there was it lost focus on what the claims of the Vandal-Conrad patent actually require, and it relied on features just as Vandal-Conrad does in its brief. It relied on features that are not required by the claims, and let me go through a few examples on that. First of all, Vandal-Conrad spends a lot of time in its red brief talking about features that are simply not claimed. For example, the effect of placement of components on exhaust gas composition. But we know there are other ways of controlling exhaust gas composition, and their claims don't exclude those. For example, direct fuel injection into the exhaust is commonly used. And they talk a lot about temperature and the fact that placement can affect temperatures of components, and that can affect the efficiency or the thermal aging of the catalyst. But the prior art, such as the Andreasen patent, tells us that there are alternative ways of controlling temperature. For example, external cooling means. The prior art also talks about external heating means. Those are not excluded by the claims of the Vandal-Conrad patent that are at issue. The board primarily found that these claims were not obvious based on its repeated conclusion that the prior art does not explicitly disclose putting a particulate filter between the LNT and the SCR. We've never argued otherwise. If we had prior art that disclosed that, this would be an anticipation case. Yeah, but you need a motivation or a suggestion or something. Well, I think under KSR and this court's decision in, for example, most recently in the Bristol Myers v. Teva case, when there are only a very small number of possibilities with predictable outcomes, which you have here, that supports a conclusion of obviousness. But you still have to get around the board's finding that the prior art's references teach away. And that's a factual finding. And you have to show that there's no substantial evidence for it. But you have to show there's no substantial evidence for that factual finding, right? No, I don't think so, Your Honor. I agree that the board found that the prior art taught away. But I think the board erred as a matter of law in those conclusions, and I'll explain why. There basically were two bases for the court's determination that there was a teaching away. One was – Well, can you ask me first – assume I think it's a factual question. Do you think there's substantial evidence to support the board's finding that the prior art teaches away? I do not. But I don't think I have to – I don't think I have to demonstrate that. I understand you don't have to think. But I want to – I mean, there are references that suggest putting the filter where they do might make the system not work properly, and so that it teaches away from doing that. Why isn't that substantial evidence? I'd like to address that. We cannot lose sight of what the claims require and what the claims don't require. Now, one of the arguments –  Yes, I am, Your Honor. Well, let me ask you my question very specifically. Assuming their claims do require putting the filter in this place where the board said the prior art teaches away from, and assuming that's a factual finding that we review for substantial evidence, why isn't the cited evidence of the prior art substantial evidence that it teaches away? I mean I can go through the specific pieces, but you know them as well as I do better. The prior art the board found teaches away. If that's substantial evidence for a factual finding of teaching away, and assuming that that's what we think the case hinges on, that's what you have to get over. I understand you have other legal arguments, but I want an answer to that. Well, I think it might be – I think I can answer your question better if we talk about the specifics of the teaching away decision by the board. The first one was that this argument that has been referred to in the briefing as the NOX robbing. So the CARE patent describes a system which involves an LNP followed by a particulate filter. Same sequence that are in the claims at issue. What the board said is there would not have been a motivation to have added an SCR to that, which would have given you precisely the same system we have here. Because the particulate filter would rob the SCR of nitrogen oxides and would diminish its efficiency. Now here's the problem with that argument, and this is why I say I believe the board erred as a matter of law. Because by saying that that teaches the way, the board is reading something into the patent claims that is not there. This issue of the particulate filter depleting the nitrogen oxides has to do with the regeneration of the particulate filter. So the particulate filter has carbon particles on it that it has trapped. Those carbon particles can then be oxidized by nitrogen oxide and that regenerates the filter. And essentially what Vandal Conrad has argued and what the board has said is that that then depletes the nitrogen oxide, which would diminish the efficiency of the SCR. But the problem is, with that argument, is there are very well-recognized... You don't dispute that there is the depletion. Not by the methods described by the claims. Because there are other ways of regenerating the particulate filter other than consuming the nitrogen oxide. They are very well known. For example, the Andreasen patent describes injecting fuel upstream of the particulate filter and essentially burning off the carbon particles. And the claims don't exclude that approach. So the claims are broad enough to include the Andreasen approach. Andreasen utilizes a particulate filter followed by an SCR. But what Andreasen says with that system, you can inject reductants, including hydrocarbon fuels upstream, and you can use external cooling means to control the temperature of the SCR. Now Vandal Conrad criticizes that. They say, well, that you have to use external cooling means. But their claims say nothing about how the catalyst is cooled or how its efficiency is controlled. Can I ask you something a little bit different? The PTO found your client's patents all invalid, right? Yes. And you're not appealing any of that? In fact, even in the PTO, we didn't dispute that. Okay, so you don't have any patents on appeal. You're just challenging your opponent's patents. Our client copied claims from the Vandal Conrad patent, and we did not dispute that the broad claims that cover this basic system were unpatentable. And the board found our claims unpatentable and found their claims unpatentable. So can I ask you, while you have standing, what injury do you have from their patents being held valid? Are you a competitor or do you intend to enter the field or something like that? Well, this is a patent interference, so under the interference rules, motions that we were entitled to file were for unpatentability of the claims. Okay, I understand all that. Are you familiar with the Consumer Watch? Yes. Well, that's what I'm asking. Obviously, you had standing to appear at the board, but here, even if you could appear at the board in an interference proceeding, it seems to me that the same principle would apply. You have to have some kind of concrete injury to have Article III standing. That issue has not come up in these proceedings before. I understand the Consumer Watchdog case is a very recent decision by this court. I believe my client is interested in this patent because it has at least a desire to develop systems that utilize this configuration. But I don't want to make that representation to the court positively because I really don't know what their commercial plans are at this precise moment in time. I mean, what I'm concerned about is if your client has no interest whatsoever in this field or developing patents or things like that, how would you have standing under Consumer Watchdog? Well, I think we have a long history of jurisprudence in which one of the things that Section 135 permits a party to do in an interference is to challenge the patentability of the claims to his or her opponent. Sure, I understand that. But again, that means you can do that at the board. It doesn't suggest that you necessarily have a right to appeal without Article III standing. I understand this wasn't addressed, but it is a question of our jurisdiction. I understand. I was just interested in what kind of possible injury you had. It is a concern, I think, how far the Consumer Watchdog case goes. But I would suggest that this is a bit different from that because we have expressed statutory authority for the party to challenge the validity and Section 141 then gives this court the authority to review that determination on appeal. Sure, I understand all of that. And I think that was frankly the same case in Consumer Watchdog. It seemed to me that because you're not a public interest organization, so presumably you have some kind of financial interest in provoking interference at the board, which would probably give you Article III standing. I just didn't see in the briefs or in the record any references to what that would be. I agree with you, Your Honor. I don't think it was ever addressed anywhere in the briefs or record. You're right. Our client is a commercial enterprise, and the issue of what they were doing commercially didn't come up during the interference, so I had no reason to inquire of them about that. But they obviously wanted to pursue this appeal, so I think that they must have had— Well, there might be kind of an assumption. I mean, you both, your client and the other side, I mean, you had patents here in play. Obviously, the patents were extremely related, so that suggests at least, doesn't prove, but it suggests that there's some sort of interest in this area. That would certainly be a reasonable assumption, Your Honor. Why don't you—will we store a couple more minutes to your rebuttal time, and why don't we hear from the other side? Thank you, Your Honor. Thank you. Mr. Jacobs. Good morning, Your Honors, and may it please the Court. Gandhi's briefing on this matter, Your Honors, both before this Court and before the PTAB, we believe has ignored the central issue related to Bandle-Conrad's invention, whether the selection and location of the various exhaust treatment components are novel and non-obvious. Well, let me ask you. It seems that at least a lot of ink is spilled on this question of whether or not there are a finite number of options or not, and you rely on the fact, and you make a case for the fact that there's certainly more than three and a lot more than that. The Board, though, I mean, we're here and we're talking about deferring to the Board's findings, et cetera, and the Board didn't go there, did it? No, Your Honor, it didn't. Do you have a reason for that? I mean, if that's such a compelling argument you have here on appeal, if the Board had thought it, obviously you'd be in a better position. Did you try to make that argument to the Board? Well, we did, Your Honor, but I believe the two arguments that Gandhi made, in a sense, collapse into one. Gandhi has asserted, Your Honors, that there are a finite number of locations, and you can look at various prior art references, and you could count the places where a particulate filter could go. But where we think Gandhi is in error is that they've taken that first assertion and folded it into a conclusion that because of that, the location picked by Bandel Conrad in its claims was predictable. Well, our cases kind of say that, don't they? Well, Your Honor, they do use the word predictable. KSR uses it. And they rely on the fact, I mean, it's a factor that there are only a finite number of alternatives, and that goes to the conclusion that something would have been predictable, right? It does, in part, Your Honor. I believe the real analysis and the words that this Court has used and the Supreme Court has used is that you would get a predictable result or a predictable solution to the problem presented by the particular selection. And we believe, based on the teachings of the Bandel Conrad patent itself, and also the prior art, Gandhi's patent publication specifically, that there are very explicit teachings in the prior art that putting the particulate filter where Bandel Conrad put it, again, downstream of the Lean Knox trap and upstream of the SCR, would not have yielded a predictable result. In fact, it was affirmatively not predictable. One of the patents in the record, Your Honor, there was a reference to the Andreasen publication, which was asserted by Gandhi against certain of Bandel Conrad's claims at the board. A later patent filed by the F&E of Gandhi's application for global technologies, an application filed approximately one month after Gandhi's parent application was filed, in about six weeks before Bandel Conrad's parent application in the interference was filed. Ford filed an application, the Tennyson 806 patent, Your Honor. It's a U.S. patent 6-928-806, in which one of the inventors in Gandhi's patent, Mr. Hammerly, or application, pardon me, Your Honor, is listed as an inventor. And in the Tennyson 806 patent, again, Your Honor, contemporaneous with both the filing of Gandhi's parent application  The Tennyson patent specifically criticized the location of the particle filter in the Andersen publication and said that placing a particle filter upstream of an SCR would either damage the SCR or require a cooling apparatus. And the inventors, again, including Mr. Hammerly, who's an inventor here, addressed these problems by stating that the particle filter must instead be located downstream of the SCR. So, in other words, Your Honors, at the same time that Gandhi filed this application, at least one of the... I'm not recalling that. Did the board discuss this in its conclusions? The board did not discuss the specific teachings of the Tennyson patent, but they're in the record and they were in Vandal Conrad's brief, Your Honor. So, our position basically, Your Honor, getting back to this predictable issue, is that predictable is not a word that sits out there by itself. That it has to be a predictable result or a predictable solution to the problem. And Ford's own patent application, contemporaneous, specifically said that you would not put a filter upstream or ahead of the SCR and instead, because of the problems associated with it, thermal damage in particular to the SCR, you would have to put it downstream. And also, Your Honor, Gandhi's publication, which is prior art to Vandal Conrad's parent application, also teaches a way. So, again, predictable is not something that sits by itself. It's a predictable result or a predictable solution. We believe the prior art makes it clear that the way Vandal Conrad decided to do this was not a predictable result or a predictable solution in view of the explicit teachings of the prior art. Do you have any view regarding Judge Hughes' question about standing here and consumer watchdog? Your Honor, of course, we did not brief that issue. And the consumer watchdog case obviously issued after we filed our briefs in this case. Your Honor, to be honest, this was an issue that we looked at when we were preparing our appeal papers because we realized that Gandhi was not challenging any of the decisions that their claims were unpatentable at the board. And, again, because the consumer watchdog case had not yet issued, at least at the time, we decided not to make an argument in this regard, although admittedly it is something we considered. Your Honors, I would like to just briefly turn to the two pair of references that were cited, that were asserted against Vandal Conrad at the Patent Office. The first was with respect to Board Rule 207C, that the prior art that one party asserts against another, that that party has to make a showing that that prior art doesn't render the claims unpatentable. And, in particular, the Kinegusa and Twig references. Your Honors, we believe that there's substantial evidence in the record that the PTAB got this right, that neither the Kinegusa patent nor the Twig publication, alone or in combination, disclose or suggest Vandal Conrad's remaining claims. In particular, the Kinegusa references, Your Honor, the Kinegusa reference, pardon me, discloses a three-way catalyst, followed by a NOx-absorbing catalyst, followed by an ammonia-absorbing catalyst. There's no teaching or suggestion of a particulate filter in Kinegusa. In addition, Your Honors, the Twig reference discloses, in a single embodiment and in the direction of exhaust flow, a nitrogen dioxide-producing catalyst, a particular filter, a NOx-absorber, and a three-way catalyst. Twig does not disclose or suggest a location for the filter. Yeah, but I think that's, I mean, we're getting back to the first argument about a finite number of choices, right? Because even the board acknowledged that everything was found in one of these two references, except for the location, right? That's true, Your Honor, and as a result, we did not challenge the finding of unpatentability of certain of Vandal Conrad's claims on the appeal. And the claims pending on appeal, as you know, Your Honor, require a very specific location for the particulate filter. So we acknowledged in our briefing, of course, that particulate filtering as a concept was known. What we've argued, of course, is that the specific location, downstream from the L&T and upstream from the SER, was novel and non-obvious. Yeah, but we're back to where we started, I think, in our discussion, which is, therefore, is it not critical, the fact that if, assuming your friend is right, and there are only three potential locations, then under our case law, when there are only a finite number, that that would be sufficient to establish that it's obvious, that there was a motivation or a suggestion. Pardon me, Your Honor. Again, I believe this gets back to this concept of predictability and predictable result or predictable solution. Vandal Conrad believes, Your Honor, that the prior art specifically teaches away from the solution that Vandal Conrad claimed and claims one intent. Am I right? The board didn't make the teaching away findings with the other aspect of this case, no? There were no teaching away findings with respect to these two references, or am I wrong about that? The board did not find, did not find a teaching away, did not say anything about teaching away with respect to Kinagusa and Twigg, I believe, Your Honor, just with the Gandhi publication and care. What the board said with respect to these first two references is that we, Vandal Conrad, successfully rebutted the presumption that those two references don't render our claims unpatentable under the board rules. Your Honor, getting to the second pair of prior art references, the ones that Gandhi affirmatively asserted against Vandal Conrad, we also believe that there's substantial evidence that supports the PTAB's decision that Gandhi failed to meet its burden that its own patent publication and the care patent render the claims unpatentable. The PTAB stated in its decision, Your Honors, and Gandhi acknowledged that its published application does not disclose the recitation of Vandal Conrad Claim 1, namely a particulate filter arranged upstream of the FCR catalytic converter and downstream of the nitrogen oxide storage catalytic converter. In particular, Your Honors, the embodiments, several of the embodiments listed in Gandhi's specification in figures 2, 4A through C, and 9 do not disclose any filtering function at all. In fact, the only embodiment in Gandhi's publication that discloses a filtering function, that's in figure 7A and 7C, the filtering function is neither upstream nor downstream of the LNT or the SCR. In fact, because of the substrate configuration in those references, it's actually in parallel to the LNT SCR wash codes. And again, Your Honors, more importantly, and as discussed at length in the PTAB's decision, there is substantial evidence that the Gandhi application teaches away and I won't go into that in great detail because I already answered Your Honors' questions about that. But in particular, at paragraphs 47 and 56 of Gandhi's publication, we believe there's teaching, at least two examples of teaching away. In addition, the board credited Bandle Conrad's expert, Dr. Oliver Croker's testimony on this point in terms of the teaching away and the board addresses that at pages 69 and 70 of its decision. Can I just ask you a housekeeping question before your time runs out? And that is that somewhere in your brief, I think in a footnote, you raised a question with regard to Claim 15. And it was my understanding, just to be clear, that you're not challenging the PTAB's conclusion. Yes, Your Honor, we've dropped that claim. Yes, there was some confusion both, I believe, in the wording of the board's decision and in some of the briefing. But that claim is out, Your Honor. Your Honors, continuing with the second pair of references, we believe this CARE 096 patent is similarly unhelpful to Gandhi's position. First, the CARE patent does not even teach the use of an SCR. And therefore, if it were combined with the teachings of the Gandhi 470 application, the references would not disclose or suggest, again, the specific location of the particulate filter claimed by Bandle Conrad. In addition, Your Honors, Gandhi improperly asserts in its arguments both made at the PTAB and on appeal that the description of the second embodiment in CARE would have motivated one of skill in the art to combine the first embodiment of CARE with the teachings of the Gandhi 470 application. We believe that Gandhi's assertion is incorrect as the location of the filter in the second embodiment of CARE requires a downstream component. In other words, the particulate filter in the second embodiment of CARE does not fully deal with or process the exhaust gases. And whereas the location in the filter in the first embodiment does not require a downstream component. And in fact, the specification of CARE explicitly says, with respect to the first embodiment, that the filter does the end processing needed to ensure that the exhaust gases that come out are adequate for the purposes of the invention. In summary, Your Honors, we believe that substantial evidence demonstrates that Bandle Conrad's claims are patentable over the cited references and in particular that the prior art teaches away from the component locations claimed by Bandle Conrad. Thank you, Your Honors. Your Honor, the council's discussion of the Ford Tennyson patent was not part of the rationale for the board's ruling, so it isn't subject to the substantial evidence rule. But I think that argument drives home the point I was trying to make in response to Judge Hughes' questions earlier. It is true that the Andreassen patent teaches controlling the temperatures and thereby the efficiency and aging of these catalysts using external cooling means. It is also true that the later Tennyson patent was critical of that in saying we can do it in a way that does not require those external cooling means. But the Bandle Conrad claims that are on appeal here do not exclude those external cooling means. So this whole argument that there is something special about the location of the particulate filter because it avoids this need to use external cooling means or avoids the need of direct fuel injection into the exhaust, while those may have some commercial value or significance, they have nothing to do with the claims that are before this court because the claims do not exclude those approaches. And that was the reason I was not very successfully, I think, conveying in response to Judge Hughes' question that the board on this teaching away argument I think made a legal error because it went beyond what's required by the claims in concluding that there was a teaching away. We also think the board made a legal error in concluding that the Gandhi 470 application teaches away. The board focused and Bandle Conrad focuses on two embodiments of the 470 application. The figure four, which is an integrated system where the catalysts are deposited on a common substrate and put into a can, a common can. And figure seven, where you have a substrate with the catalyst layers applied in wash coats. However, and those are embodiments that are described in that Gandhi application and perhaps even preferred embodiments. But what the board did not focus on is that the first embodiment described in example two of the Gandhi 470 application describes these as separate components. An oxidation catalyst followed by an LNP, followed by an SCR. There is nothing in the Gandhi 470 application that teaches away from a particular placement of the particulate filter in that embodiment. And it was error for the PTAB to rule that this was a teaching away because as this court has said in the Galderma case, merely disclosing preferred embodiments does not amount to a teaching away. There has to be some sort of an active discouragement or denigration of the claimed invention to constitute a teaching away. That simply doesn't exist here. Your time is up. All right. Thank you very much. We thank both counsel the case is submitted. Thank you, Your Honor.